**William H. RILEY and Janet A. Riley, Appellants,**

v.

**FLAGSTAR BANK, FSB, Appellee.**

**No. 2008–CA–000174–MR.**

Court of Appeals of Kentucky.

March 27, 2009.

Rehearing Denied June 2, 2009.

Discretionary Review Denied by Supreme Court Aug. 18, 2010.

James R. Golden, Middlesboro, KY, for appellant.

David S. Strite, Andie Brent Camden, Louisville, KY, for appellee.

Before CLAYTON, MOORE, and STUMBO, Judges.

## OPINION

MOORE, Judge.

William H. Riley and Janet A. Riley appeal the Whitley Circuit Court's order granting a directed verdict against them. After a careful review of the record, we reverse the circuit court's order and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In October 2002, the Rileys mortgaged their home in the amount of $112,500. Debra Armstrong, a Vice President of Flagstar Bank, FSB, testified at trial that the original lender for the mortgage was Tri–County Mortgage. Ms. Armstrong attested that the mortgage was assigned to Flagstar through Mortgage Electronic Registration Systems, Inc., (MERS) within three days of the date that the mortgage originated. Thus, Ms. Armstrong testified that Flagstar was the proper party to release the mortgage once it was paid in full.

On December 1, 2003, the Rileys paid off the balance of this original mortgage on their home after re-financing the mortgage through Tri–County Mortgage, which arranged for Flagstar to provide the financing behind the re-financed mortgage. According to Flagstar, it first tried to release the original lien on March 18, 2004.

In June 2004, Amber Noell, the closing processor at the law office of Darrell Saunders, where the re-financing of the mortgage was handled, discovered that the original mortgage had not yet been released. Ms. Noell testified that on June 11, 2004, she called Flagstar, spoke with a woman named "Edwina," and informed Edwina that a lien needed to be released. Ms. Noell told Edwina that if Edwina would give her Flagstar's fax number, then Ms. Noell would send the information about the mortgage to Flagstar. Edwina provided a fax number and Ms. Noell faxed a letter containing that information to Flagstar at that fax number, with Darrell Saunder's signature affixed to the bottom of the letter by a signature stamp. The letter that Ms. Noell faxed was a form letter she had saved on her computer that she had used in other cases to send to other lienholders, and she simply changed the information in the letter to include the information specific to the Rileys' original mortgage. After sending the fax, Ms. Noell testified that the fax machine she used printed out a fax transmittal sheet stating that the fax had been successfully sent to the fax number at Flagstar provided by Edwina.

Flagstar contended that it did not receive the fax from Ms. Noell. In fact, Ms. Armstrong submitted an affidavit attesting that the fax number provided to Ms. Noell was "not the correct telephone number with which to request a lien release." However, the fax number that was provided to Ms. Noell was a fax number associated with Flagstar, even if it was not the Flagstar fax number specifically associated with lien releases. It is important to note that Flagstar acknowledged in its response to the Rileys' motion for summary judgment that its "daily report of lien releases, as well as the additional payoff processing reports, show a second attempt to discharge the lien on June 11, 2004," and that happened to be the date that Ms. Noell testified she sent the fax.

After June 11, 2004, no one tried to contact Flagstar again concerning its fail-

ure to release the lien. The Rileys did not learn of Flagstar's failure to release the lien until January 2005, when Darrell Saunders notified them. Flagstar was served with the complaint in the present case on February 7, 2005, and the complaint alleged that Flagstar owed the Rileys penalties under Kentucky Revised Statute (KRS) 382.365, due to Flagstar's failure to release the lien. Flagstar released the lien on April 27, 2005.

The case went to trial, and after the Rileys' case was presented, Flagstar moved for a directed verdict. The circuit court granted Flagstar's motion, holding that the Rileys

> presented no evidence during their case in chief that would allow a jury to conclude that Flagstar Bank received written notice of its failure to timely release the lien at issue in this case. [The Rileys] could only point to a letter faxed to a fax number associated with Flagstar Bank. The only other evidence presented by the [Rileys] was a transmission receipt from a fax machine indicating that this fax had indeed been transmitted. Nothing in the evidence presented provided any proof of a receipt of the facsimile transmission by Flagstar Bank. Proof of a successful transmission does not equal proof of a successful receipt of a facsimile. Furthermore, the statute requires written notice which the Court interprets to be proof of something beyond a facsimile transmission.

The circuit court also reasoned that the letter faxed by the Rileys' attorney "was not actually signed by [the attorney] but signed via a signature stamp[,]" and that this created more doubt about whether a facsimile[-]only transmission could constitute written notice. The court also stated that "the Constitutional due process that [Flagstar] was entitled to would not have been met by a facsimile[-]only transmis-

sion, but would have required some sort of certified mail at the very least."

Further, the court reasoned that the mortgage that was not released timely

> was actually a mortgage to Tri[-]County Mortgage pursuant to the wording of the mortgage document and not a mortgage to Flagstar Bank. Despite whatever arguments might be made regarding the assignment of said mortgage, the mortgage holder of record in the Whitley Circuit Court County Clerk's office was still Tri[-]County Mortgage. There was never any notice given to Tri[-]County Mortgage of an unreleased lien, thus casting further doubt on whether the provisions of notice required by KRS 382.365 were met.

Finally, the circuit court noted that during the time the mortgage was not released, Flagstar still had "a valid and active lien on the property based on the refinance transaction carried out by the [Rileys] wherein they borrowed additional monies from Flagstar Bank to pay off Flagstar Bank."

The Rileys now appeal, contending, *inter alia,* that there was sufficient evidence introduced that Flagstar received the written notice to get beyond a directed verdict. Thus, the circuit court erred when it granted Flagstar's motion for a directed verdict.

## II. STANDARD OF REVIEW

 The standard of review for an appeal of a directed verdict is firmly entrenched in our law. A trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or there are no disputed issues of fact upon which reasonable minds could differ. Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve

such conflicts. A motion for directed verdict admits the truth of all evidence favorable to the party against whom the motion is made. Upon such motion, the court may not consider the credibility of evidence or the weight it should be given, this being a function reserved for the trier of fact. The trial court must favor the party against whom the motion is made, complete with all inferences reasonably drawn from the evidence. The trial court then must determine whether the evidence favorable to the party against whom the motion is made is of such substance that a verdict rendered thereon would be palpably or flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice. In such a case, a directed verdict should be given. Otherwise, the motion should be denied.

*Gibbs v. Wickersham,* 133 S.W.3d 494, 495–96 (Ky.App.2004) (internal quotation marks and citations omitted).

### III. ANALYSIS

The Rileys first argue that sufficient evidence was introduced to show that Flagstar received written notice to get beyond a directed verdict. At the time that the facsimile, which the Rileys contend constituted written notice, was allegedly transmitted, the version of KRS 382.365 that was in effect provided, in pertinent part, as follows:

(1) A holder of a lien on real property ... shall release the lien in the county clerk's office where the lien is recorded within thirty (30) days from the date of satisfaction.

(2) A proceeding may be filed by any owner of real property ... against a lienholder that violates subsection (1) of this section....

(3) Upon proof to the court of the lien being satisfied, the court shall enter a judgment releasing the lien. The judgment shall be with costs including a reasonable attorney's fee. If the court finds that the lienholder received written notice of its failure to release and lacked good cause for not releasing the lien, the lienholder shall be liable to the owner of the real property in the amount of one hundred dollars ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice, of the violation for which good cause did not exist.

(4) A lienholder that continues to fail to release a satisfied real estate lien, without good cause, within forty-five (45) days from the date of written notice shall be liable to the owner of the real property for an additional four hundred dollars ($400) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice, for a total of five hundred dollars ($500) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice. The lienholder shall also be liable for any actual expense including a reasonable attorney's fee incurred by the owner in securing the release of real property by such violation.

. . . .

(6) For the purposes of this section, "date of satisfaction" means that date of receipt by a holder of a lien on real property of a sum of money in the form of a certified check, cashier's check, wired transferred funds, or other form of payment satisfactory to the lienholder that is sufficient to pay the principal, interest, and other costs owing on the obligation that is secured by the lien on the property.

KRS 382.365 (2004).

In 2006, after the complaint in the present case was filed, KRS 382.365 was re-

vised concerning, in pertinent part, the written notice aspect of the statute. Specifically, the revised statute provided that the

> written notice shall be properly addressed and sent by certified mail or delivered in person to the final lienholder or final assignee as follows:
>
> (a) For a corporation, to an officer at the lienholder's principal address or to an agent for process located in Kentucky; however, if the corporation is a foreign corporation and has not appointed an agent for process in Kentucky, then to the agent for process in the state of domicile of the corporation[.]

KRS 382.365(4)(a). This 2006 version of the statute remains in effect today.

At the time that the facsimile was sent, the statute did not require "written notice" to be sent by certified mail or delivered in person. Flagstar asserts that the 2006 version of KRS 382.365, to the extent that it specifies what constitutes "written notice" and how it should be sent, should be applied retroactively in the present case because the legislature's intent may be discerned from the fact that the legislature added language to the current version of the statute to specify how written notice should be provided to the lienholder.

Kentucky Revised Statute 446.080(3) provides that "[n]o statute shall be construed to be retroactive, unless expressly so declared." However, legislation has been applied retroactively, "in the absence of an express declaration that the provision is to be so applied, in those instances where the courts have determined that the provision was remedial or procedural in nature and that retroactive application of the provision was consistent with the legislative intent." *Spurlin v. Adkins,* 940 S.W.2d 900, 901 (Ky.1997).

■ In the present case, the legislature did not specify in the current version of KRS 382.365 that the provisions concerning written notice were to be applied retroactively, and we are not able to discern any legislative intent for those provisions to be so applied. Furthermore, as applied to the present case, the changed requirements concerning written notice would constitute a substantive change as to what, exactly, "written notice" means. Therefore, we decline to apply the current version of KRS 382.365 retroactively.

■ Further, because the version of KRS 382.365 in effect at the time that the facsimile was transmitted did not define what constituted "written notice," only reasonable notice was required to be provided. *See Thomson v. Tafel,* 309 Ky. 753, 761, 218 S.W.2d 977, 981 (1949). The circuit court held that a facsimile of a letter was insufficient to constitute written notice. However, we are unaware of any reason why a letter informing a lienholder that it had not released a lien, sent by facsimile, could not have constituted "written notice" between a property holder and a lienholder under the version of KRS 382.365 in effect at the time that the facsimile was transmitted in the present case. Courts in the Commonwealth have long held that "[t]ypewriting and printing are kinds of 'writing[,]'" and that "a telegram is a writing." *Blackburn v. City of Paducah,* 441 S.W.2d 395, 397 (Ky.1969). Thus, it stands to reason that a facsimile, under the circumstances presented here, may also constitute a "writing." Therefore, the circuit court erred in holding that, in 2004, when the facsimile was transmitted in this case, a facsimile could not constitute written notice under KRS 382.365.

■ The circuit court also held that the attorney's signature stamp on the facsimile cast further doubt on whether the notice was sufficient. However, "[a] rubber

stamp impression may constitute a signature." *Blackburn*, 441 S.W.2d at 397. Flagstar does not argue that the attorney did not sanction the use of his signature stamp on the letter sent by facsimile. Therefore, the circuit court erred in holding that the signature stamp created doubt concerning the sufficiency of the notice. This is a factual issue that the trier of fact should decide.

■ The court further reasoned that "the Constitutional due process that [Flagstar] was entitled to would not have been met by a facsimile[-]only transmission...." However, this Court has previously noted that "courts have held that violations of the Fourth Amendment and the [D]ue [P]rocess [C]lause occur only when state action is involved[.]" *Marks v. Commonwealth*, 698 S.W.2d 533, 534 (Ky. App.1985). Consequently, because only private parties were involved in the transmission of the facsimile, there could not have been a due process violation when the facsimile was sent to Flagstar. Thus, the circuit court erred in this holding.

■ The circuit court next stated the mortgage that was not timely released was a mortgage to Tri–County Mortgage, rather than Flagstar, and the Whitley Circuit Court County Clerk's office still listed Tri–County Mortgage as the mortgage holder of record. Thus, the court reasoned that because Tri–County Mortgage was the original mortgage holder, as well as the one on record, but no notice was provided to Tri–County Mortgage concerning the failure to release the lien, Flagstar was entitled to a directed verdict.

The version of KRS 382.365 that was in effect at the time the facsimile was transmitted stated that a property owner had to give written notice only to the *lienholder* of its failure to release the lien, to be awarded the penalty sums provided for in that statute. In the affidavit of Debra Armstrong, Flagstar's Vice President, Ms. Armstrong acknowledged that the lien was held by Flagstar. Thus, Flagstar was the "lienholder" of the lien on the Rileys' property. Furthermore, because only a lienholder of property may release a lien, and the lien on the Rileys' property was ultimately released by Flagstar after the Rileys filed the present lawsuit, this further underscores the premise that Flagstar was the lienholder in the present case. Therefore, Tri–County Mortgage was not the lienholder at the time the facsimile was transmitted, and Tri–County Mortgage could not release a lien that it no longer held. Accordingly, the circuit court erred in its finding that Tri–County Mortgage should have been given written notice.

■ Next, the circuit court noted, but did not explain its reason for so noting, that "when the mortgage was not released, Flagstar Bank still had a valid and active lien on the property based on the re-finance transaction carried out by the [Rileys] wherein they borrowed additional monies from Flagstar Bank to pay off Flagstar Bank." Again, we are uncertain why the circuit court felt compelled to note this, but regardless, KRS 382.365 did not at the time the facsimile was transmitted, nor does it currently, contain an exception to its provisions concerning penalties to be awarded for a lienholder's failure to release a lien. In other words, the statute did not provide that penalties are unwarranted in the event that the lienholder that failed to release the lien held a subsequent lien on the property. Because the statute provided no such exception, we are not permitted to create one to apply to the present case. Accordingly, to the extent that the circuit court granted a directed verdict on the grounds that Flagstar had another, subsequent, current lien on the property at the time that the facsimile was

sent, the circuit court's reasoning was misguided.

The Rileys next argue that the circuit court erred in granting Flagstar's motion for a directed verdict. As we previously mentioned, the facsimile of the letter that was transmitted in this case could have constituted written notice under the 2004 version of KRS 382.365, which was in effect at that time, if the facsimile was actually received by Flagstar. Evidence in the form of a transmittal sheet that Darrell Saunders's fax machine issued to show that the facsimile was successfully sent was introduced at trial. Additionally, Ms. Noell testified that she sent the letter by facsimile to the phone number provided to her by "Edwina" from Flagstar. Evidence was submitted to show that the fax number to which Ms. Noell sent the facsimile was associated with Flagstar, even if it was not associated specifically with Flagstar's lien release department. Furthermore, evidence was introduced to show that Flagstar attempted to release the lien on the date that Ms. Noell sent the letter by facsimile informing Flagstar of its failure to release the lien.

This evidence, when considered together, was sufficient to allow a jury to infer that Flagstar had received the facsimile and that such constituted written notice of its failure to release the lien. Therefore, the circuit court erred in granting Flagstar's directed verdict. This factual determination should have been left for the jury to decide.

We note that the Rileys and Flagstar make arguments for and against, respectively, the application of Kentucky's Uniform Electronic Transactions Act, KRS 369.101 to KRS 369.120, to this case. Specifically, the Rileys argue that, pursuant to this Act, a facsimile transmission is valid and enforceable as "written notice." Flagstar disagrees. Regardless, because we have held, *supra,* that under the 2004 version of KRS 382.365, a facsimile transmission, if received by the recipient, constituted "written notice," we decline to address the parties' arguments concerning the applicability of Kentucky's Uniform Electronic Transactions Act.

The Rileys also argue that the service of their summons and complaint upon Flagstar in the present case should have constituted "written notice." However, the Rileys did not raise this issue in the prehearing statement filed with this Court. Thus, because they did not raise this issue in their prehearing statement, and they did not timely move this Court for permission to submit additional issues for "good cause shown," this issue is not properly before this Court. *Sallee v. Sallee,* 142 S.W.3d 697, 698 (Ky.App.2004) (citing CR [1] 76.03(4)(h) and (8)) (internal quotation marks removed).

Flagstar argues in its brief on appeal that a property owner must act in good faith by following up on notice sent to a lienholder to ensure that the lien was, in fact, released. This premise is supported by this Court's decision in *Union Planters Bank, N.A., v. Hutson,* 210 S.W.3d 163 (Ky.App.2006). However, the determination of whether a party acted in good faith is a question of fact. *See Rowan County v. Sloas,* 201 S.W.3d 469, 474 (Ky.2006) (discussing *Harlow v. Fitzgerald,* 457 U.S. 800, 816–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Therefore, this is an issue for a jury to determine in the first instance, not an appellate court.

Accordingly, the order of the Whitley Circuit Court granting Flagstar's motion for a directed verdict is reversed, and this

---

1. Kentucky Rules of Civil Procedure.

case is remanded for further proceedings consistent with this opinion.

ALL CONCUR.