RENDERED: JUNE 4, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2017-CA-1172-MR

CLARK COUNTY-WINCHESTER
HERITAGE COMMISSION AND
HARRY ENOCH                                                    APPELLANTS


                        APPEAL FROM FAYETTE CIRCUIT COURT
v.             HONORABLE JAMES D. ISHMAEL, JR., JUDGE
                        ACTION NO. 08-CI-06061


THOMAS NORTON; BRENDA
WHITE; CARL NORTON; CLYDE
WILCOXEN; GEORGE NORTON;
GESS FAMILY PARTNERSHIP, LTD;
IRENE GERDEMAN, AS TRUSTEE
OF THE IRENE GERDEMAN LIVING
TRUST; JANE GRAVES
BLACKFORD; JEFFREY R.
WALKER, TRUSTEE OF THE J.H.
GRAVES TRUST UNDER WILL FOR
BENEFIT OF JANE GRAVES
BLACKFORD; LARRY WHITE;
MARY LOUIS BRATTON
QUERTERMOUS; PATSY A.
BRATTON; TROY THOMPSON; AND
WAYNE QUERTERMOUS                                              APPELLEES


AND

NO. 2017-CA-1206-MR


CLARE SIPPLE AND VANESSA
ZEOLI                                                                        APPELLANTS


                        APPEAL FROM FAYETTE CIRCUIT COURT
v.                      HONORABLE JAMES D. ISHMAEL, JR., JUDGE
                               ACTION NO. 08-CI-06061


CLARK COUNTY-WINCHESTER
HERITAGE COMMISSION; BRENDA
WHITE; CARL NORTON; CLARK
COUNTY FISCAL COURT; CLYDE
WILCOXSON; GEORGE NORTON;
GESS FAMILY PARTNERSHIP, LTD;
HARRY ENOCH; IRENE
GERDEMAN AS TRUSTEE OF THE
IRENE GERDEMAN LIVING TRUST;
KENTUCKY HERITAGE COUNCIL;
LARRY WHITE; MARK DENNEN;
MARTY PERRY; MARY LOUIS
BRATTON QUERTERMOUS; PATSY
A. BRATTON; THOMAS NORTON;
TROY THOMPSON; UNIVERSITY
OF KENTUCKY; AND WAYNE
QUERTERMOUS                                                                   APPELLEES


AND

                                NO. 2017-CA-1207-MR


CLARK COUNTY FISCAL COURT                                                    APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.         HONORABLE JAMES D. ISHMAEL, JR., JUDGE
ACTION NO. 08-CI-06061


THOMAS NORTON; BRENDA
WHITE; CARL NORTON; CLYDE
WILCOXEN; GEORGE NORTON;
GESS FAMILY PARTNERSHIP, LTD;
IRENE GERDEMAN, AS TRUSTEE
OF THE IRENE GERDEMAN LIVING
TRUST; JANE GRAVES
BLACKFORD; JEFFREY R.
WALKER, TRUSTEE OF THE J.H.
GRAVES TRUST UNDER WILL FOR
BENEFIT OF JANE GRAVES
BLACKFORD; LARRY WHITE;
MARY LOUIS BRATTON
QUERTERMOUS; PATSY A.
BRATTON; TROY THOMPSON; AND
WAYNE QUERTERMOUS                                    APPELLEES


AND


NO. 2017-CA-1208-MR


MARTY PERRY, NATIONAL
REGISTER COORDINATOR FOR
THE KENTUCKY HERITAGE
COUNCIL AND THE STATE
HISTORIC PRESERVATION OFFICE;
COMMONWEALTH OF KENTUCKY,
COMMERCE CABINET, KENTUCKY
HERITAGE COUNCIL, STATE
HISTORIC PRESERVATION OFFICE;
AND MARK DENNEN, ACTING

-3-

EXECUTIVE DIRECTOR,
KENTUCKY HERITAGE COUNCIL
AND STATE HISTORIC
PRESERVATION OFFICER                                          APPELLANTS


                        APPEAL FROM FAYETTE CIRCUIT COURT
v.              HONORABLE JAMES D. ISHMAEL, JR., JUDGE
                            ACTION NO. 08-CI-06061


THOMAS NORTON; BRENDA
WHITE; CARL NORTON; CLYDE
WILCOXEN; GEORGE NORTON;
GESS FAMILY PARTNERSHIP, LTD;
IRENE GERDEMAN, AS TRUSTEE
OF THE IRENE GERDEMAN LIVING
TRUST; JANE GRAVES
BLACKFORD; JEFFREY R.
WALKER, TRUSTEE OF THE J.H.
GRAVES TRUST UNDER WILL FOR
BENEFIT OF JANE GRAVES
BLACKFORD; LARRY WHITE;
MARY LOUIS BRATTON
QUERTERMOUS; PATSY A.
BRATTON; TROY THOMPSON; AND
WAYNE QUERTERMOUS                                              APPELLEES

    AND

                            NO. 2017-CA-1209-MR


THOMAS NORTON; GEORGE
NORTON; BRENDA WHITE; CARL
NORTON; CLYDE WILCOXEN;
GESS FAMILY PARTNERSHIP, LTD;
IRENE GERDEMAN, AS TRUSTEE
OF THE IRENE GERDEMAN LIVING

                                    -4-

TRUST; JANE GRAVES
BLACKFORD; JEFFREY R.
WALKER, AS TRUSTEE OF THE J.H.
GRAVES TRUST UNDER WILL FOR
BENEFIT OF JANE GRAVES
BLACKFORD; LARRY WHITE;
MARY LOUIS BRATTON
QUERTERMOUS; MARY LOUISE
BRATTON; PATSY A. BRATTON;
TROY THOMPSON; AND WAYNE
QUERTERMOUS                                    CROSS-APPELLANTS


                    CROSS-APPEAL FROM FAYETTE CIRCUIT COURT
v.                  HONORABLE JAMES D. ISHMAEL, JR., JUDGE
                              ACTION NO. 08-CI-06061


CLARE SIPPLE; CLARK COUNTY
FISCAL COURT; CLARK COUNTY-
WINCHESTER HERITAGE
COMMISSION; HARRY ENOCH;
KENTUCKY HERITAGE COUNCIL,
STATE HISTORIC PRESERVATION
OFFICE, COMMONWEALTH OF
KENTUCKY, COMMERCE
CABINET; MARK DENNEN, ACTING
EXECUTIVE DIRECTOR,
KENTUCKY HERITAGE COUNCIL
AND STATE HISTORIC
PRESERVATION OFFICER; MARTY
PERRY, NATIONAL REGISTER
COORDINATOR FOR THE
KENTUCKY HERITAGE COUNCIL
AND THE STATE HISTORIC
PRESERVATION OFFICE; AND
VANESSA ZEOLI                                    CROSS-APPELLEES

<u>OPINION</u>
<u>AFFIRMING IN PART, REVERSING IN PART, AND REMANDING</u>

** ** ** ** **

BEFORE: ACREE, JONES, AND K. THOMPSON, JUDGES.

JONES, JUDGE: These appeals and the related cross-appeal arise out of a series of orders entered by the Fayette Circuit Court ("circuit court") on May 15, 2017, and made final and appealable by the circuit court's order of June 13, 2017. Because the appeals arise out of the same orders, share a common set of facts, and raise identical or substantially similar issues, we have elected to consider the appeals in a single opinion for the sake of consistency and clarity.

The Appellees/Cross-Appellants (hereinafter referred to as "Plaintiffs") are a group of individuals who own real property in an area known as the Upper Reaches of Boone Creek ("Upper Reaches").[1] The Appellants/Cross-Appellees (hereinafter collectively referred to as "Defendants") are: the Clark County Fiscal Court; the Clark County Winchester Heritage Commission and three of its employees/agents, Clare Sipple, Vanessa Zeoli, and Harry Enoch; and the Kentucky Heritage Council, its Director, Mark Dennen, and its National Register Coordinator, Marty Perry. The litigation concerns the actions Defendants took in

---

[1] The Upper Reaches is comprised of approximately 10,000 acres of land; it spans parts of Fayette and Clark Counties. Not all the Upper Reaches property owners are part of this litigation.

connection with having the Upper Reaches listed as a historic district on the National Register of Historic Places ("National Register").

As part of the orders on appeal, the circuit court: (1) granted Plaintiffs summary judgment on their due process claim against Defendants; (2) determined Defendants were not entitled to sovereign, governmental and/or qualified official immunity with respect to the due process claim; (3) awarded Plaintiffs a judgment against each defendant jointly and severally for recovery of attorneys' fees in the amount of $206,465.60 and costs in the amount of $13,465.43 pursuant to 54 U.S.C.[2] § 307105; and (4) denied Plaintiffs' request for additional recompense for the time and expenses they personally invested in the litigation.

Following entry of the circuit court's orders, the parties filed a series of appeals with this Court: (1) Appeal No. 2017-CA-1172; (2) Appeal No. 2017-CA-1206; (3) Appeal No. 2017-CA-1207; (4) Appeal No. 2017-CA-1208; and (5) Appeal No. 2017-CA-1209.

(1) Appeal No. 2017-CA-1172 was filed by the Clark County Winchester Heritage Commission ("CCH Commission") and Harry Enoch, the CCH Commission's Chairman during the relevant time period. The CCH Commission asserts that the circuit court wrongly concluded that it was not entitled to sovereign immunity, and Enoch claims that the circuit court likewise wrongly

---

[2] United States Code.

-7-

denied his claim for qualified official immunity. Additionally, like Defendants in the other appeals detailed below, the CCH Commission and Enoch assert the circuit court erroneously granted summary judgment against them on Plaintiffs' due process claim, and further erred in awarding Plaintiffs attorneys' fees pursuant to 54 U.S.C. § 307105.

(2) Appeal No. 2017-CA-1206, was filed by Clare Sipple and Vanessa Zeoli. Sipple and Zeoli assert that the circuit court erroneously rejected their motions for dismissal based on sovereign and/or qualified official immunity. They also assert the circuit court failed to include in its orders of May 15, 2017, that Sipple and Zeoli are entitled to indemnification by the CCH Commission, and Zeoli likewise contends that the circuit court should have included her right to indemnification from the University of Kentucky. Zeoli and Sipple also maintain that the circuit court wrongfully granted summary judgment to Plaintiffs on their abuse-of-process cross-claims. Finally, Zeoli contends the circuit court erred in failing to dismiss Plaintiffs' claims against her for lack of personal jurisdiction and improper service of process.

(3) Appeal No. 2017-CA-1207 was filed by the Clark County Fiscal Court. The Clark County Fiscal Court's primary assignment of error is that the circuit court should have dismissed it from this suit based on its claim of sovereign immunity. Alternatively, the Clark County Fiscal Court maintains that the circuit

court erroneously awarded attorneys' fees and costs to Plaintiffs based on a misplaced finding that it violated Plaintiffs' due process rights.

(4) Appeal No. 2017-CA-1208 was filed by the Kentucky Heritage Council, State Historic Preservation Office and two of its employees/officers, Marty Perry and Mark Dennen. Together, they argue the circuit court erred in failing to find that they were entitled to governmental and/or qualified official immunity. They additionally assert that the circuit court erred in finding that they were liable for violating Plaintiffs' due process rights; and alternatively, that the circuit court erred in awarding Plaintiffs their costs and attorneys' fees pursuant to 54 U.S.C. § 307105.

(5) Appeal No. 2017-CA-1209 is a cross-appeal filed by Plaintiffs. Plaintiffs' cross-appeal is focused on the circuit court's refusal to award Plaintiffs certain "additional recompense" pursuant to 54 U.S.C. § 307105. The additional recompense sought by Plaintiffs represents the time and expenses, apart from attorneys' fees, the individual Plaintiffs incurred in preparing for and attending various meetings concerning this litigation and the time they spent locating other property owners.

Having extensively reviewed the very lengthy record and being otherwise sufficiently advised, we affirm in part, reverse in part, and remand for entry of a modified judgment and further proceedings consistent with this Opinion.

# I. NATIONAL REGISTER OF HISTORIC PLACES

Before delving into the factual and procedural nuances of this particular litigation, it is important to understand the process used to include a property on the National Register and the role played by local, state, and federal agencies and officials in the process.

The National Historic Preservation Act ("NHPA"), now codified at 54 U.S.C. § 300101, was originally enacted by Congress in 1966.[3] The overarching purpose of the NHPA is to "foster conditions under which our modern society and our historic property can exist in productive harmony[.]" 54 U.S.C. § 300101(1). To further this objective, the NHPA authorizes the Secretary of the Interior to "expand and maintain a National Register of Historic Places composed of districts, sites, buildings, structures, and objects significant in American history, architecture, archeology, engineering, and culture." 54 U.S.C. § 302101. Owner participation in the nomination process is required by statute. Specifically, 54 U.S.C. § 302105 provides:

> (a) Regulations.--The Secretary shall promulgate regulations requiring that before any property may be included on the National Register or designated as a National Historic Landmark, the owner of the property,

---

[3] The NHPA was formerly codified at 16 U.S.C. § 470 *et seq.* During the course of this litigation, the former section was repealed. *See* Pub. L. No. 113-287, § 7, 128 Stat. 3094 (2014). It was later recodified, as modified. Pub. L. No. 113–287, § 3, 128. Stat. 3094 (2014). We cite to the current version of the statute because none of the provisions at issue are materially different.

or a majority of the owners of the individual properties within a district in the case of a historic district, shall be given the opportunity (including a reasonable period of time) to concur in, or object to, the nomination of the property for inclusion or designation. The regulations shall include provisions to carry out this section in the case of multiple ownership of a single property.

(b) When property shall not be included on National Register or designated as National Historic Landmark.--*If the owner of any privately-owned property, or a majority of the owners of privately owned properties within the district in the case of a historic district, object to inclusion or designation, the property shall not be included on the National Register or designated as a National Historic Landmark until the objection is withdrawn.*

(c) Review by Secretary.--The Secretary shall review the nomination of the property when an objection has been made and shall determine whether or not the property is eligible for inclusion or designation. If the Secretary determines that the property is eligible for inclusion or designation, the Secretary shall inform the Advisory Council on Historic Preservation, the appropriate State Historic Preservation Officer, the appropriate chief elected local official, and the owner or owners of the property of the Secretary's determination.

*Id.* (emphasis added).

The NHPA requires the Secretary of the Interior "in consultation with national historical and archeological associations" to establish criteria for properties to be included on the National Register and:

(2) promulgate regulations for--

(A) nominating properties for inclusion on, and removal from, the National Register and the recommendation of properties by certified local governments;

(B) designating properties as National Historic Landmarks and removing that designation;

(C) considering appeals from recommendations, nominations, removals, and designations (or any failure or refusal by a nominating authority to nominate or designate);

(D) nominating historic property for inclusion in the World Heritage List in accordance with the World Heritage Convention;

(E) making determinations of eligibility of properties for inclusion on the National Register; and

(F) notifying the owner of a property, any appropriate local governments, and the general public, when the property is being considered for inclusion on the National Register, for designation as a National Historic Landmark, or for nomination to the World Heritage List.

54 U.S.C. § 302103.

The regulations required by 54 U.S.C. § 302103, which are at the heart of these appeals, are contained in 36 C.F.R.[4] Part 60. "The National Park Service is the bureau of the Department of Interior to which the Secretary of Interior has delegated the authority and responsibility for administering the National Register program." 36 C.F.R. § 60.3(h). In turn, the National Park

---

[4] Code of Federal Regulations.

Service has delegated the authority to list properties and determine their eligibility for the National Register to the Keeper. 36 C.F.R. § 60.3.

The regulations provide several methods for nomination of properties to the National Register, including, "[n]ominations prepared under approved State Historic Preservation Programs, submitted by the State Historic Preservation Officer and approved by the NPS," as occurred in this case. 36 C.F.R. § 60.1(b)(3). The regulations are very detailed with respect to how the State Historic Preservation Officer ("SHPO") is to identify, consider, and nominate properties to the National Register. 36 C.F.R. § 60.6(c). After a property has been identified and selected, the SHPO must provide written notice to property owners[5] of the State's intent to bring the nomination before the State Review Board. The notice must be sent "at least 30 but not more than 75 days before the State Review Board meeting." *Id.* "The notice shall give the owner(s) at least 30 but not more than 75 days to submit written comments and concur in or object in writing to the nomination of such property." *Id.* Individual written notice is not required for a nomination with more than fifty property owners. 36 C.F.R. § 60.6(d). In such cases, written notice must be provided to the chief elected local officials of the

---

[5] The regulations define "owner(s)" as: "those individuals, partnerships, corporations or public agencies holding fee simple title to property. Owner or owners does not include individuals, partnerships, corporations or public agencies holding easements or less than fee interests (including leaseholds) of any nature." 36 C.F.R. § 60.3(k).

county in which the property or district[6] is located and a general notice published. *Id*. However, nothing precludes a state from providing individual notice in districts containing more than fifty property owners if it so chooses. *Id*.

Property owners who wish to object must comply with 36 C.F.R. § 60.6(g), which provides:

> Upon notification, any owner or owners of a private property who wish to object shall submit to the State Historic Preservation Officer a notarized statement certifying that the party is the sole or partial owner of the private property, as appropriate, and objects to the listing. In nominations with multiple ownership of a single private property or of districts, the property will not be listed if a majority of the owners object to listing. Upon receipt of notarized objections respecting a district or single private property with multiple owners, it is the responsibility of the State Historic Preservation Officer to ascertain whether a majority of owners of private property have objected. If an owner whose name did not appear on the list certifies in a written notarized statement that the party is the sole or partial owner of a nominated private property such owner shall be counted by the State Historic Preservation Officer in determining whether a majority of owners has objected. Each owner of private property in a district has one vote regardless of how many properties or what part of one property that party owns and regardless of whether the property contributes to the significance of the district.

---

[6] "A district is a geographically definable area, urban or rural, possessing a significant concentration, linkage, or continuity of sites, buildings, structures, or objects united by past events or aesthetically by plan or physical development. A district may also comprise individual elements separated geographically but linked by association or history." 36 C.F.R. § 60.3(d).

*Id.* "If the owner of a private property or the majority of such owners for a district or single property with multiple owners have objected to the nomination prior to the submittal of a nomination, the State Historic Preservation Officer shall submit the nomination to the Keeper only for a determination of eligibility pursuant to subsection (s) of this section." 36 C.F.R. § 60.6(n). This is in accord with 54 U.S.C. § 302105(b) which provides that the Keeper shall not list a property on the National Register where the owner or "a majority of the owners of privately owned properties within the district in the case of a historic district, object to inclusion or designation[.]" *Id.*

If the SHPO determines that a property meets the National Register criteria for evaluation, he/she must sign a form certifying that: "(1) All procedural requirements have been met; (2) The nomination form is adequately documented; (3) The nomination form is technically and professionally correct and sufficient; (4) In the opinion of the State Historic Preservation Officer, the property meets the National Register criteria for evaluation." 36 C.F.R. § 60.6(o). After receipt of the nomination, notice is given by publication in the Federal Register that the nominated property is being considered for listing in the National Register. 36 C.F.R. § 60.6(q). Following publication of the notice in the Federal Register, another period opens for objections or withdrawals by owners and comments by other persons. 36 C.F.R. § 60.6(q)-(t). "If the owner of private property (or the

majority of such owners for a district or single property with multiple owners) has objected to the nomination by notarized statement prior to listing, the Keeper shall review the nomination and make a determination of eligibility within 45 days of receipt, unless an appeal is filed." 36 C.F.R. § 60.6(s). "The Keeper shall list such properties determined eligible in the National Register upon receipt of notarized statements from the owner(s) of private property that the owner(s) no longer object to listing." *Id.*

Ultimately, the authority to decide whether a nominated property should be listed on the National Register rests with the Keeper, "even where a nomination initially comes through a state preservation program." *Moody Hill Farms Ltd. Partnership v. U.S. Dep't of the Interior, National Parks Serv.*, 205 F.3d 554, 558 (2d Cir. 1999). Specifically, the Keeper has a duty to independently verify the accuracy of the list of property owners and the objections related thereto. *See Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 538 (D.D.C. 2016).

Once a property is listed on the National Register, the NHPA and its implementing regulations require federal agencies to consider the impact of federal undertakings and federally funded projects on the property. *See* 54 U.S.C. § 306101; 36 C.F.R. § 800.1. The NHPA "is a procedural statute requiring [federal] government agencies to stop, look, and listen before proceeding when their action will affect national historical assets." *Presidio Historical Ass'n v. Presidio Trust*,

811 F.3d 1154, 1169 (9th Cir. 2016) (internal quotation marks and citation omitted). The listing also makes owners eligible for certain grants and tax credits; however, in very limited circumstances, mostly involving surface minerals, the listing may interfere with an owner's rights to use his property as he desires without first securing approval.[7]

Once listed, a property cannot be removed from the National Register except by way of a petition filed with the Keeper. The grounds for removal set forth in 36 C.F.R. § 60.15(a), include "[p]rejudicial procedural error in the nomination or listing process." 36 C.F.R. § 60.15(a)(4). "Any person or organization may petition in writing for removal of a property from the National Register[.]" 36 C.F.R. § 60.15(c). Once the Keeper acts on a removal petition, it concludes the administrative review process.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Clare Sipple works for the CCH Commission. Around 2005, the CCH Commission was encouraged to add more rural land to the National Register. Sometime thereafter, Sipple made an application to the Clark County Community Foundation to secure additional funds to pay for an intern to assist the CCH Commission with various tasks, including identifying and surveying rural

---

[7] The Surface Mining and Control Act of 1977 requires consideration of a property's historic values in determining whether to issue a surface coal mining permit. 30 U.S.C. § 1201.

properties for possible inclusion on the National Register. Sipple hired Vanessa

Zeoli, a graduate student at the University of Kentucky, for the intern position.

Zeoli began her work by surveying the resources in three watersheds in Clark

County: Boone Creek, Jouett Creek, and Lower Howard's Creek. Ultimately,

however, Zeoli and Sipple decided Zeoli should concentrate her work on the Upper

Reaches of Boone Creek because the lower and middle parts of that watershed had

already been added to the National Register. Zeoli worked as an intern surveying

the Upper Reaches throughout the summer of 2006.[8]

After Zeoli completed her internship, she decided that she wanted to

make the Upper Reaches the focus of her master's thesis in conjunction with her

coursework at the University of Kentucky. Sometime in the fall of 2007, the CCH

Commission and Zeoli agreed that Zeoli would prepare the nomination package for

the Upper Reaches to be included on the National Register. Zeoli was to be

compensated for her work by the CCH Commission;[9] however, it appears that

Zeoli worked primarily with Marty Perry, Kentucky's SHPO, and not with anyone

at the CCH Commission as she prepared the nomination package paperwork.

---

[8] Plaintiffs have alleged that Zeoli trespassed on their property in conjunction with her work in surveying the Upper Reaches. The trespass claim is still pending before the circuit court, and nothing in this Opinion should be construed as making any determination with respect to that claim.

[9] With respect to her preparation of the nomination package, Zeoli described herself as a "freelance employee" of the CCH Commission.

Zeoli completed the nomination package, and by letter dated August 27, 2008, the Kentucky Heritage Council notified affected property owners that the Upper Reaches was being considered for inclusion on the National Register. The letter sent to property owners states:

> We are pleased to inform you that the district named above, which includes your property at ADDRESS, CITY, STATE, ZIP, as a contributing resource will be considered by the Kentucky Historic Preservation Review Board for nomination to the National Register of Historic Places. You are invited to attend the Review Board Meeting, which will be held on Wednesday, August 27, 2008, at 10:00 a.m., central time, at the Knights of Pythias Hall, South Fifth and Morgan Streets, Russellville, Kentucky. Enclosed is an information sheet describing the results of the National Register listing.
>
> You are invited to attend a public meeting to learn about this process. On Thursday, August 14, 2008, Marty Perry, the Kentucky Heritage Council's National Register Coordinator, will lead a public information meeting at Boone's Creek Baptist Church, 185 North Cleveland Road, Lexington, Kentucky 40509, at 6:30 p.m. He will answer questions about what the National Register listing means to property owners.
>
> You are invited to comment in writing on whether your property should be nominated to the National Register. If you support the nomination, a written response is not required. Should you wish to object to the nomination, you must submit a **<u>notarized</u>** letter of objection. Please read the attached information sheet for information to aid your decision of support for or objection to the nomination.
>
> Comments must be received before the State Review Board considers this nomination on August 27, 2008. A

copy of the nomination and the criteria under which properties are evaluated are on file in the State Historic Preservation Office and will be made available upon request according to 36 CFR 60.6.

If you have any questions, please contact Marty Perry, National Register Coordinator at (502) 564-7005 extension 132.

Record ("R.") at 56. General notice was also posted in local newspapers.

The number of property owners was initially determined through publicly-available tax records. However, Plaintiffs have alleged that certain irregularities occurred with respect to the number of owners eligible to vote/object. Plaintiffs maintain that Defendants claimed, without sufficient support, that trusts, limited liability companies, and corporate entities received only one vote per parcel, while individual owners (natural persons) each received a vote no matter how the property was titled to them. Plaintiffs provide the example that a husband and wife jointly owning a single parcel of property could submit two votes, while a similarly-situated limited liability company with two or more members received only one vote. Plaintiffs additionally allege that proponents of the nomination engaged in "certain chicanery" such as actually purchasing real property owned by an opponent of the nomination to change that vote. Plaintiffs further allege that the number of property owners claimed by Defendants continued to fluctuate throughout the process such that the number of parcels and objections was an ever-changing and fluctuating target.

Perry led the August 14, 2008, informational meeting at Boone Creek Church. Perry explained to the property owners that, unless 50% of the owners objected by way of written, notarized objection letters, the Upper Reaches would be listed. Plaintiffs contend that Perry also attempted to discourage owners from submitting objections by informing them that it would not do any good because the property would be listed anyway. Perry has denied making such statements.

Following the informational meeting, the nomination of the Upper Reaches was placed on the agenda for review and a vote at the State Review Board meeting. The meeting took place in Russellville, Kentucky, which is approximately three hours from the Upper Reaches. Plaintiffs have alleged that the meeting was scheduled so far away to dissuade property owners from objection; Defendants have disavowed any such purpose. A number of property owners objected at or immediately before the meeting, and the atmosphere grew quite tense.[10] The nomination was passed, and no official action was taken at the meeting. A second informational meeting was held, and a final State Review Board meeting to consider the nomination was scheduled for December 9, 2008.

---

[10] Sipple was present at the State Review Board meeting. Plaintiffs have alleged that Sipple defamed them in conjunction with certain statements she made at the meeting. The defamation claim is still pending before the circuit court, and nothing in this Opinion should be construed as making any determination with respect to that claim.

The second State Review Board meeting did not take place in December as scheduled because prior to the meeting, on November 26, 2008, Plaintiffs commenced this litigation by filing a complaint in Fayette Circuit Court. Plaintiffs alleged that Defendants violated their constitutional rights and committed other tortious acts in conjunction with their efforts to have Plaintiffs' property listed on the National Register.[11]

Along with their complaint, Plaintiffs filed a motion for a temporary restraining order and injunction mandating that Defendants cease their efforts and activities associated with having the Upper Reaches listed on the National Register. On December 5, 2008, the circuit court issued an order granting Plaintiffs a temporary restraining order and temporary injunction, which stopped the December 2008 State Review Board meeting from taking place.

Next, Defendants moved the circuit court to dismiss Plaintiffs' claims against them on various grounds. These motions remained pending for a substantial period of time, during which the case existed in a kind of limbo, with Plaintiffs seeking to take discovery and Defendants objecting on the basis that there were motions to dismiss pending before the circuit court with respect to whether the court had jurisdiction.

---

[11] Harry Enoch was not named as a defendant in the original suit. He was added as a defendant as part of Plaintiffs' first amended complaint.

-22-

While the motions to dismiss were pending, the circuit court set aside the temporary injunction/restraining order it had issued earlier in the case. Essentially, this allowed the nomination process to move forward. The nomination was placed on the State Review Board's agenda for May 12, 2009. Plaintiffs maintain that objections were submitted at the meeting, and that a clear majority of the owners had submitted written objections by this date. Plaintiffs further complain that the list of property owners eligible to vote continued to fluctuate, and that Defendants' methods for determining which owners were eligible to vote and the counting of the objections was arbitrary. On or about June 19, 2009, Perry and Mark Dennen, the executive director of the Kentucky Heritage Council, notified the circuit court that the nomination package had been submitted to the Keeper. However, due to this litigation, the nomination was withdrawn and returned by the Keeper on or about July 7, 2009. It was ultimately resubmitted a short time later.

In September of 2009, the circuit court held a hearing on the motions to dismiss. At the hearing, Plaintiffs pointed to several alleged problems, flaws, and irregularities with the procedures used by Defendants to notify the property owners located in the Upper Reaches, to identify and count the property owners, to determine which property owners were allowed to vote/object, and the location established by the Kentucky Heritage Commission for review of the nomination by

the Kentucky Historic Preservation Review Board. The circuit court made various statements at the hearing regarding the regulations and the process used to nominate properties to the National Register. However the court expressed doubts about its jurisdiction. No written order was entered immediately following this hearing.

By Order entered November 3, 2009, the circuit court dismissed all Plaintiffs' claims with prejudice:

> [T]he Court having determined that there is nothing further to be done and that there is a fundamental issue of jurisdiction, the case is DISMISSED with PREJUDICE. Nevertheless, the Court expresses due process concern with respect to the federal regulations as depriving landowners of property rights "to be left alone" and the "right not to have your property designated as something that you object to under the process." The Court further states that the process is fundamentally flawed as being arbitrary and unclear in the manner in which it deals with objections to listing in a National Register Historic District and the counting of those objections. Having found no error with the administration of the regulation by the Defendants and in light of jurisdictional issues, the Court hereby dismisses this action with respect to all Defendants.

R. at 909. Around this same time, on November 27, 2009, the Upper Reaches was listed on the National Register, following the Keeper's receipt of the Kentucky State Review Board's nomination.

After the circuit court denied Plaintiffs' motion to alter, amend, or vacate its order of dismissal, the parties appealed to this Court. *Norton v. Perry*,

-24-

No. 2009-CA-2343-MR, 2013 WL 310159, at *1 (Ky. App. Jan. 11, 2013) (ordered not to be published by the Kentucky Supreme Court) (hereinafter referred to as "*Norton I*").  Following our review, we held that the circuit court erred in dismissing the action, reversed the dismissal and remanded the matter to the circuit court for "appropriate discovery and further proceedings." *Id.* at *17.  The Kentucky Supreme Court denied discretionary review.

Following this Court's remand in *Norton I*, additional discovery was taken by the parties, including several depositions.  Thereafter, Plaintiffs filed a motion for partial summary judgment on liability with respect to their due process claim.  On September 13, 2016, the circuit court issued an Opinion and Order addressing Plaintiffs' motion.  With respect to the due process claim, the circuit court concluded that it had to grant Plaintiffs' motion because our holdings in *Norton I* conclusively established a due process violation that it was required to follow based on the law-of-the-case doctrine.

Subsequently, Plaintiffs filed a motion for attorneys' fees, a motion for additional recompense for out-of-pocket expenses, and a motion to order Defendants to take all steps necessary to delist/remove the Upper Reaches from the National Register.[12]  The circuit court conducted a hearing on January 30 and 31,

---

[12] Thereafter, this litigation took a short and ill-fated detour when Defendants removed the matter to federal district court pursuant to 28 U.S.C. § 1441. *Norton v. Perry*, No. CV 5:16-438-DCR, 2017 WL 29336, at *1 (E.D. Ky. Jan. 3, 2017).  The federal district court remanded the

2017. At the conclusion of the hearing, the circuit court stated on the record that it was inclined to award Plaintiffs their attorneys' fees but not any additional recompense. It further indicated that as related to due process, it did not believe Defendants were entitled to immunity from suit. The circuit court requested the parties to submit findings of fact and conclusions of law memorializing its oral pronouncements for its consideration. As directed, both sides tendered proposed findings of fact and conclusions of law.

On May 15, 2017, the circuit court entered an Opinion and Order, which provides:

> This matter is before the Court for entry of appropriate Orders arising from the hearing conducted on January 30-31, 2017. The Court has received and reviewed the "competing" Orders submitted by both Plaintiffs' Counsel and Defendants' Counsel.
>
> Based upon that review, the Court has determined that actually **both** Orders fairly reflect the Court's oral rulings at the aforesaid hearings. The Order submitted by Defendants' Counsel is a fair recital of the Court's actual words (in all of its rambling and colloquialisms to the embarrassment of the Court) whereas the Order submitted by Plaintiffs' Counsel is a fair recital of the Court's thinking and oral rulings without the ramblings and extra verbiage.
>
> Having considered both tendered Orders, it is the Court's opinion both Orders should be signed by the Court to reflect essentially the same result but from slightly

---

case to the Fayette Circuit Court after determining that it was improperly removed by Defendants. *Id.* at \*4.

-26-

> different perspectives and language. Accordingly, the
> Court has signed both tendered Orders and incorporates
> them both in this general Order as if set out at length
> herein. The Order reflecting the January 23, 2017,
> hearing has been signed and will be entered separately.

R. at 3878.

As noted, the court's order incorporated the two competing orders tendered by the parties: (1) the May 15, 2017 Findings of Fact and Conclusions of Law and Order as submitted by Plaintiffs; and (2) the May 15, 2017 Order and Judgment as submitted by Defendants. R. at 3885-3910. Hereinafter, we will refer to the three orders as the "Combined General Order of May 15, 2017." Therein, the circuit court determined that the law of the case, as established by this Court in *Norton I*, dictated a conclusion that Defendants violated Plaintiffs' due process rights in conjunction with having the Upper Reaches listed on National Register. With respect to compensation, the circuit court relied on a section of the NHPA, 54 U.S.C. § 307105,[13] to conclude that because Plaintiffs had substantially prevailed on their due process claims, it had the discretion to award them attorneys' fees, expert witness fees, and other costs of participating in the civil action. Citing *Lehman v. Williams*, 301 Ky. 729, 193 S.W.2d 161 (1946), and other cases along that vein, the circuit court found that Defendants could not rely on sovereign immunity to shield them from a suit alleging a violation of Plaintiffs' due process

---

[13] Formerly cited as 16 USCA § 470w-4.

-27-

rights. Alternatively, the circuit court concluded that an agency's work in arranging for state property to be listed on the National Register is not an integral part of state government that would provide immunity from a due process suit. The circuit court declined to consider whether Defendants were entitled to immunity from suit and/or damages with respect to any of Plaintiffs' other causes of action.

Also on May 15, 2017, the circuit court entered an order on Plaintiffs' motion to order delisting and to reinstate the injunction as permanent. That order provides:

> Plaintiffs have moved the Court to enter an order requiring and directing the Defendants to take all steps necessary to de-list the property from the National Register of Historic Places and to reinstate the injunction as permanent. . . .
>
> IT IS HEREBY ORDERED AND ADJUDGED that based upon the findings and conclusions of the Court as set forth on the Record during the hearing which are incorporated herein, Plaintiffs' Motion is Sustained and Defendants are ordered to delist the properties.[14]
>
> Defendants are FURTHER ORDERED to make edits to the Letter of Transmittal prior to its mailing today as addressed during the hearing to include something substantially similar to: "pursuant to the regulation it is our understanding that the Keeper will respond to our

---

[14] While the circuit court had jurisdiction to order Defendants to petition the Keeper to delist the Upper Reaches, as explained at the outset of this Opinion, only the Keeper has the authority to order a property delisted. 36 C.F.R. § 60.15. Since the Keeper was not a party to this action, the circuit court did not actually have the jurisdiction to order delisting.

Petition within 45 days. By reason of the foregoing, the SHPO sees no reason why the subject property should not be removed from the National Historic Register." The Plaintiffs' request for a permanent injunction is continued.

R. at 3880-81.

Approximately a month later, the Kentucky SHPO submitted a petition prepared by Plaintiffs' counsel to the Keeper requesting removal of the Upper Reaches from the National Register pursuant to 36 C.F.R. § 60.15(a)(4). Upon review, the Keeper disagreed with the circuit court's conclusion, which was based on this Court's opinion in *Norton I*, and denied the petition to delist the Property from the National Register on March 13, 2017.[15]

Next, the parties filed a series of motions seeking to alter, amend or vacate the circuit court's Combined General Order of May 15, 2017. The circuit court conducted a hearing as related to the motions. Thereafter, on June 13, 2017,

---

[15] On August 23, 2017, Plaintiffs filed suit in federal district court seeking review of the Keeper's denial of the petition to delist the Property under the Administrative Procedure Act (APA), 5 U.S.C. § 702. *See Norton v. Loether*, No. CV 5:17-351-DCR, 2018 WL 1352152, at *2 (E.D. Ky. Mar. 15, 2018). Relying on the state court holdings as articulated by this Court and the circuit court, Plaintiffs alleged that the process used to include the Upper Reaches violated their due process rights. *Id.* at *4. The Keeper moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). The federal district court denied the motion to dismiss as related to the APA and due process claims. *Id.* The federal litigation is ongoing and is pending before the federal district court on Plaintiffs' motion for summary judgment, which was submitted for decision in November of 2019. *See* United States District Court for the Eastern District of Kentucky, Civil Docket No. 5:17-CV-00351-CHB. We take judicial notice of the federal case for the purpose of providing a complete and accurate summary of the status of the delisting. *See Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 265 (Ky. App. 2005) (taking judicial notice of federal docket sheets on the federal court's Public Access to Court Electronic Records website).

it entered an order denying all motions to alter, amend, or vacate, and certified that there was no just reason for delay with respect to the Combined General Order of May 15, 2017, making it final and appealable pursuant to CR[16] 54.02. R. at 4024-25.

These appeals by Defendants and Plaintiffs' related cross-appeal followed.

### III. SCOPE OF REVIEW

As is apparent from the lengthy procedural history recited above, these appeals are factually, legally, and procedurally complicated. The litigation has been ongoing for over a decade; during that time, the case has bounced back and forth between federal district court, the Fayette Circuit Court, and this Court. In an effort to achieve resolution, the parties have raised a number of issues for us to consider as part of these appeals. While we appreciate the parties' desire to achieve finality on as many issues and claims as possible, we have an independent duty to assess jurisdiction for ourselves. *See Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky. 2005).

Typically, only final judgments are appealable. Under CR 54.01, "[a] final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding[.]" However, pursuant to CR 54.02(1), "[w]hen

---

[16] Kentucky Rules of Civil Procedure.

-30-

more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay." In its June 13, 2017 order the circuit court certified that there was no just reason for delay making the Combined General Order of May 15, 2017, final and appealable. R. at 4024-25. In relevant part, the June 13 order provides:

> The matters and issues addressed by the Court through the Order and Judgment entered on May 15, 2017, the Findings of Fact and Conclusions of Law and Order entered May 15, 2017, and the Opinion and Order entered May 15, 2017, and under CR 54.02 are final and appealable and there is no just cause for delay.

*Id.*

Because the circuit court fully disposed of the due process claim with respect to all Defendants as part of its Combined General Order of May 15, 2017, we conclude that its CR 54.02 designation was proper allowing us to review the circuit court's summary judgment in favor of Plaintiffs on the due process claim, including its award of attorneys' fees and costs and denial of Plaintiffs' motion for additional recompense.

Additionally, an immediate appeal lies from the denial of sovereign, governmental, and/or qualified official immunity, even if the order is interlocutory. *Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009);

-31-

*Commonwealth v. Ky. Ret. Sys.*, 396 S.W.3d 833 (Ky. 2013); *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644 (Ky. 2017); *Baker v. Fields*, 543 S.W.3d 575 (Ky. 2018). However, a trial court's order is not immediately appealable simply because immunity is at issue. If the trial court determines that disputed issues of material fact exist or concludes that additional discovery is necessary to resolve the immunity question, leaving the question of immunity unresolved, the order is not immediately appealable. *Chen v. Lowe*, 521 S.W.3d 587, 590 (Ky. App. 2017).

In this case, with respect to the various immunity issues raised by the parties, the circuit court concluded that there was no immunity of state actors for due process violations. As such, the circuit court declined to address any other issues related to whether the state actors were entitled to immunity from suit and/or damages with respect to Plaintiffs' other claims, including Plaintiffs' claims for permanent injunctive relief, unconstitutional takings, conversion, trespass, and defamation. And, in previous orders, the circuit court had in fact stated that there were disputed issues of fact remaining with respect to the immunity question.

Therefore, at this juncture, we conclude that we have jurisdiction only to review the circuit court's denial of immunity with respect to the due process claim and the judgment finding Defendants jointly and severally liable for Plaintiffs' attorneys' fees and costs and the circuit court's denial of additional recompense sought by Plaintiffs. Specifically, we do not have jurisdiction to and

will not review immunity with respect Plaintiffs' other claims as the circuit court has expressly stated that it was reserving judgment on immunity on those claims. Likewise, we do not have jurisdiction to and will not review decisions that have not been certified as final and appealable by the circuit court, *i.e.*, decisions not included as part of the Combined General Order of May 15, 2017.

In Appeal No. 2017-CA-1206, Sipple and Zeoli assert that the circuit court wrongfully granted summary judgment to Plaintiffs and dismissed Sipple's and Zeoli's abuse-of-process counterclaims against Defendants.[17] The circuit court's decision granting Plaintiffs' summary judgment on the abuse-of-process claims was included in an opinion and order entered on September 13, 2016. That opinion and order does not contain a CR 54.02 recitation of finality, and the June 13, 2017 Order referenced above does not mention any intent to make the September 13, 2016 Opinion and Order final and appealable. "If the trial court grants a final judgment upon one or more but less than all of the claims or parties, that decision remains interlocutory unless the trial court makes a separate determination that "there is no just reason for delay." *Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722, 726 (Ky. 2008). Since the trial court did not make a determination that its September 13, 2016 Opinion and Order should be made

---

[17] In 2015, Sipple and Zeoli filed an amended counterclaim asserting abuse of process against Defendants.

-33-

final and appealable with no just reason for delay, it remains interlocutory, and beyond our jurisdiction to review at this juncture. The same rationale applies to any decisions (or lack thereof) made with respect to Sipple and Zeoli's claims for indemnification against the University of Kentucky and/or the CCH Commission.[18] *Dixie Transport Co. v. Reed*, 386 S.W.2d 735, 738 (Ky. 1964) ("The question of what disposition shall be made of Gehring's cross-claim against Mr. Reed for indemnity is not before us, because the judgment, which was a partial one under CR 54.02, did not dispose of the cross-claim."). For the same reasons, we will also not entertain Zeoli's jurisdictional and process-related arguments.[19]

## IV. IMMUNITY

Violations of due process occur only when state action is at issue. *Riley v. Flagstar Bank, FSB*, 316 S.W.3d 884, 890 (Ky. App. 2009). Immunizing the Commonwealth, its agencies, and its actors from suit for a constitutional violation would allow the government to act without redress, an untenable

---

[18] It does not appear that the circuit court expressly considered and rejected Sipple and Zeoli's claims for indemnification from the CCH Commission. While the circuit court did rule on Zeoli's claim for indemnification against the University of Kentucky, and dismissed it as party, the circuit court's June 2015 amended order of dismissal specifically states that the order "is interlocutory and non-final."

[19] We note that this Court previously discussed and rejected Zeoli's jurisdictional challenges in *Norton I*. *Norton I*, 2013 WL 310159, at *10-15. And, with respect to service, the record reveals that Zeoli was personally served with process in Fayette County when she appeared for her deposition mooting any issues regarding prior improper service by mail via the Secretary of State.

proposition. "The fundamental right of due process cannot be trumped by sovereign immunity." *Miller v. Administrative Office of Courts*, 361 S.W.3d 867, 876 (Ky. 2011). This does not mean, however, that a litigant is entitled to recover a money judgment from the state based on a due process or other alleged constitutional violation. Our Supreme Court has held that there is no "tort cause of action in Kentucky to provide money damages for constitutional violations." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 537 (Ky. 2011).[20] "Due process affords only prospective relief against the state." *Miller*, 361 S.W.3d at 876.

Based on the above, we agree with the circuit court that Defendants were not entitled to dismissal of Plaintiffs' due process claim against them based on immunity. Our case law is clear that the state, its agencies, and its officers/employees are not immune from suits alleging violations of constitutional rights. And, because Kentucky permits only prospective relief against the state and/or its agencies for due process violations, we need not consider the various arguments regarding immunity from damages for due process violations.[21]

---

[20] Obviously, monetary compensation is an appropriate remedy for takings claims since the right itself is founded on just compensation. *See* KY. CONST. § 13 or § 242.

[21] Additionally, because we have concluded that the circuit court did not have the authority to award attorneys' fees and costs pursuant to 54 U.S.C. § 307105, *see infra*, Section VI p. 46-53, we need not address whether such an award violates sovereign, governmental or qualified official capacity immunity.

## V. LIABILITY WITH RESPECT TO PLAINTIFFS' DUE PROCESS CLAIM

Rather than analyzing whether any of the named Defendants was individually liable for violating Plaintiffs' due process rights, the circuit court concluded that we held in *Norton I* that "the constitutional rights and due process rights of Plaintiffs had been violated in this process," R. at 3901, and then proceeded to hold the Defendants jointly and severally liable for Plaintiffs' costs and attorneys' fees. Specifically, the circuit court opined that based on the law-of-the-case doctrine, Defendants' liability with respect to the due process claim was conclusively established.

The law-of-the-case doctrine is "an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been." *B.S.S. v. K.S.*, 599 S.W.3d 858, 862 (Ky. 2020) (quoting *Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky. 1956)). "[O]n remand from a higher court a lower court must obey and give effect to the higher court's express or necessarily implied holdings and instructions." *Brown v. Commonwealth*, 313 S.W.3d 577, 610 (Ky. 2010). Proper application of the law-of-the-case doctrine "is a question of law to be reviewed *de novo*." *University Medical Center, Inc. v. Beglin*, 432 S.W.3d 175, 178 (Ky. App. 2014).

In *St. Clair v. Commonwealth*, 455 S.W.3d 869 (Ky. 2015), our

Supreme Court explained:

> Under the law-of-the-case doctrine, an appellate court, on a subsequent appeal, is bound by a prior decision on a former appeal in the same court. The rule means that issues decided in earlier appeals should not be revisited in subsequent ones.

*Id.* at 887 (citations and internal quotation marks omitted). The law-of-the-case

doctrine "applies to the determination of questions of law and not questions of

fact." *Hardaway Management Co. v. Southerland*, 977 S.W.2d 910, 915 (Ky.

1998) (citing *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982)).

Whether an issue was conclusively established as part of a prior

appeal, however, necessarily requires consideration of the procedural and

evidentiary posture of the case during the first appeal vis-à-vis the procedural and

evidentiary posture of the case after remand. *See Lake v. Smith*, 467 S.W.2d 118

(Ky. 1971). "Where multiple appeals occur in the course of litigation, the law-of-

the-case doctrine provides that issues decided in earlier appeals should not be

revisited in subsequent ones when the evidence is substantially the same." *Wright

v. Carroll*, 452 S.W.3d 127, 130 (Ky. 2014). "The crucial requirement is that the

appellate court enters a final decision on the question rather than merely

commenting on the issue." *H.R. ex rel. Taylor v. Revlett*, 998 S.W.2d 778, 780

(Ky. App. 1999).

Additionally, the doctrine is subject to very limited exceptions. *Doyle v. Doyle*, 549 S.W.3d 450, 455 (Ky. 2018) (citing *Brown*, 313 S.W.3d at 610). The doctrine is "prudential in nature and serves to direct a court's decision, not limit its power." *Doe v. Coleman*, 497 S.W.3d 740, 747 (Ky. 2016) (quoting *Wright*, 452 S.W.3d at 130). It will not be applied when "the former decision [appears] to be clearly and palpably erroneous." *Blackwell's Adm'r*, 291 S.W.2d at 542. However, "the mere existence of conflict between the law of a case and other decisions does not guarantee the application of an exception." *Brooks v. Lexington-Fayette Urban County Housing Authority*, 244 S.W.3d 747, 753 (Ky. App. 2007). "[T]he appellate court [may] admit and correct an error made in the previous decision where substantial injustice might otherwise result and the former decision is clearly and palpably erroneous." *Wilson v. Commonwealth*, 975 S.W.2d 901, 904 (Ky. 1998) (quoting *Gossett v. Commonwealth*, 441 S.W.2d 117, 118 (Ky. 1969)).

To properly consider how the law-of-the-case doctrine applies in this instance we must consider both (1) this Court's statements in *Norton I*; and (2) the posture of the litigation as it existed at the time we made those statements. We begin our analysis with the second point, because it is vitally important to consider our prior statements within the proper procedural context. *Norton I* came to us following the circuit court's dismissal of all Plaintiffs' claims on jurisdictional

-38-

grounds. Despite dismissing the case with prejudice for lack of jurisdiction, the circuit court included in its dismissal that it had "concerns" with "respect to the federal regulations as depriving landowners of property rights 'to be left alone' and the 'right not to have your property designated as something that you object to under the process.'" R. at 909. It went on to express similar concerns that the process established by the federal regulations regarding objections was "fundamentally flawed as being arbitrary and unclear in the manner in which it deals with objections to listing in a National Register Historic District and the counting of those objections." *Id.* Additionally, notwithstanding the fact that the matter was before the circuit court on a motion to dismiss, the circuit court stated that it "found no error with the administration of the regulations by the Defendants" and dismissed the action in light of that finding in conjunction with the jurisdictional issues. *Id.*

Plaintiffs appealed the dismissal to our Court. In their *Norton I* appellate brief, Plaintiffs argued that the circuit court wrongly decided the jurisdictional issues, and dismissal was inappropriate because they had stated claims on which relief could be granted. They further asked this Court "to affirm the Trial Court's findings of fact and conclusion of law with instructions to enforce its prior rulings that the [Defendants'] actions violate the rights of the [Plaintiffs]." R. at 1330. This request was somewhat perplexing given Plaintiffs argued the

appeal in the context of a motion to dismiss standard noting that it was improper in such a context for the trial court to have given any consideration to whether Plaintiffs would ultimately prevail on their claims against any Defendants. R. at 1332.

At the outset of *Norton I* we noted that in addition to requesting that we reverse the circuit court's dismissal, Plaintiffs were requesting us to direct the circuit court "to enter an order that [Defendants] violated [Plaintiffs'] due process rights in accordance with the trial court's oral statements at the September 9, 2009, hearing." *Norton I*, 2013 WL 310159, at *1. However, we did not accept this invitation; instead, after concluding that the trial court wrongly dismissed the action, we simply reversed the dismissal and remanded the matter to the circuit court "for further proceedings."

In our analysis section of *Norton I*, we summarized Plaintiffs' arguments as being: "(1) the trial court erred in dismissing the complaint; and (2) that both the circuit court and this Court have subject matter jurisdiction." *Norton I*, 2013 WL 310159, at *4. We summarized Defendants' arguments as being:

> (1) the applicable standard of review supports the circuit
> court's dismissal of this action; (2) Appellants' claims
> were properly dismissed against all Appellees as barred
> by the applicable sovereign, governmental, absolute,
> statutory, qualified and/or qualified official immunity; (3)
> although the circuit court correctly dismissed the action
> for lack of jurisdiction, in the alternative the court had
> jurisdiction to dismiss the Appellants' complaint for

failure to state claims upon which relief could be granted since no procedural errors occurred in the nomination or listing of the Upper Reaches; this action did not involve an unconstitutional taking and the action did not involve deprivation of property rights; (4) the circuit court correctly dismissed this action because it lacked both subject matter and personal jurisdiction. In support of this fourth argument, the Appellees contend that: (1) the circuit court correctly held that it lacked jurisdiction; (2) Appellants failed to exhaust their administrative remedies; (3) Appellants' claims are moot; (4) the case raises federal issues requiring exclusive jurisdiction of federal courts; and (5) lack of personal jurisdiction over Appellees.

*Norton I*, 2013 WL 310159, at *5.

Considering the two sets of arguments together, we summarized/condensed the issues before us as falling into four categories:

(1) jurisdictional issues including personal jurisdiction and subject matter jurisdiction, as well as the concurrent jurisdiction of state and federal courts to hear their claims; and whether the doctrines of mootness and failure to exhaust administrative remedies apply; (2) ***constitutional issues including unconstitutional taking and due process violations, both substantive and procedurally***; (3) governmental immunity; and (4) common law claims including trespass and defamation.

*Id.* (emphasis added).

Our analysis and statements with respect to the second category forms the basis of the present dispute with respect to the law-of-the-case doctrine. However, one statement we made in analyzing the jurisdictional issue is profoundly important in understanding our later statements with respect to due

-41-

process. Specifically, in discussing the jurisdictional issues, we noted "if [Plaintiffs] sought to have a court of this Commonwealth determine if procedural irregularities occurred in the nomination process in order to provide a ground for removal when petitioning the Keeper under 36 C.F.R. § 60.15(a)(4), then exhaustion of administrative remedies would not be required." *Norton I*, 2013 WL 310159 at *10.

We began our analysis of Plaintiffs' due process claim by discussing the difference between substantive and procedural due process. *Id*. at *15. We then stated that:

> [W]e agree with the trial court that the process used by [Defendants] to assess the number of property owners and the corresponding number of objections is fundamentally flawed. It is arbitrary and unclear because there is no fixed time at which the number and names of the landowners are determined at a reasonable time prior to the hearing, thus leading to a continual fluctuation in the number of landowners and required objections.

*Id.* We also concluded that the regulations as interpreted and applied by the Keeper were arbitrary insomuch as they did not "enumerate that trusts, estates, LLCs, and LPs are only entitled to a single vote while, in contrast, a husband and wife each have a vote regardless of how the title is held." *Id.* at *16. Nevertheless, based on the record before us we agreed with the circuit court that "the [Defendants] did not misapply the administration of the regulations." *Id.* We concluded our discussion of due process by stating:

-42-

> We simply find said regulations to be inadequate by their failure to address the counting of votes concerning trusts, estates, LPs, and LLCs and the fixing of a definite time for designation of the number of parcels of land and the landowners entitled to participate. Thus, we reverse and remand this matter for further proceedings.

*Id.*

"[P]rocedural due process, which requires the government to follow known and established procedures, and not to act arbitrarily or unfairly in regulating life, liberty or property." *Miller v. Johnson Controls, Inc.*, 296 S.W.3d 392, 397 (Ky. 2009). Thus, the plain implication of *Norton I* is that we determined that the regulations at issue were arbitrary such that they deprived Plaintiffs of procedural due process. While the matter was before us on a motion to dismiss, one of Plaintiffs' claims sought a declaratory judgment that the actions alleged in their complaint (including application of the federal regulations) constituted violations of Plaintiffs' constitutional rights. It is clear that in analyzing whether the circuit court correctly dismissed that claim, we determined as a matter of law that the regulations concerning when and how to determine the number of property owners and the counting of their objections as interpreted by the Keeper and as applied in this case were arbitrary and capricious.

We agree with Defendants that our prior analysis of the due process issue was not overly in depth; however, we disagree that our statements concerning the regulations were mere dicta or not properly before us. We also cannot

-43-

conclude that our holding that the regulations are arbitrary and capricious is so "clearly and palpably erroneous" that we should not apply the law-of-the-case doctrine. *Wilson*, 975 S.W.2d at 904. To this end, we note that at least one other state court has held the regulations to be violative of due process for similar reasons as we articulated in *Norton I*. *See Brown v. Parks and Recreation Department by and through State Historic Preservation Office*, 443 P.3d 1170, 1176 (Or. App. 2019).

We do believe the circuit court erred, however, to the extent it determined that each of the named Defendants was liable for the due process violation based on the law-of-case doctrine, and to the extent it assessed liability on each of the Defendants without considering the role each played in interpreting and administering the regulations with respect to identifying the property owners and counting their votes.

The regulations are clear that property ownership and objections are to be determined at the state level by the SHPO in conjunction with a certified state historic preservation program. The Kentucky Heritage Council was established for this purpose. *See* KRS[22] 171.3801. During the relevant time period, Defendant Dennen served as the Executive Director of the Kentucky Heritage Council, and Defendant Perry served as the SHPO. The record irrefutably establishes that they

---

[22] Kentucky Revised Statutes.

-44-

were charged with identifying the property owners, providing notice to the property owners, calculating the total number of property owners and tabulating the objections for the purpose of ascertaining whether a majority of the owners had objected thereby preventing listing on the National Register. The processes these Defendants employed were in consultation with the Keeper based on the Keeper's interpretation of the regulations. To the extent we previously held that the regulations as applied in this case were violative of Plaintiffs' due process rights, these are the Defendants who were directly involved in applying the regulations related to property owner identification and vote counting at the state level. Therefore, based on our prior holding, it was not error for the circuit court to conclude that Plaintiffs' due process rights at the state level were violated by the Kentucky Heritage Council, Dennen, and Perry in association with their application of the regulations as interpreted by the Keeper.[23]

The same cannot be said for the other Defendants. The sole allegation against the Clark County Fiscal Court is that it authorized creation of the CCH Commission. It played no direct role in the nomination process, and it is not charged with applying the regulations. While the CCH Commission and Sipple

---

[23] As we did in our prior opinion, we reiterate that these Defendants did not do anything outside of the regulations or the Keeper's interpretation thereof. The due process conclusion with respect to the Kentucky Heritage Council, Dennen, and Perry is based entirely on their application of the regulations and the Keeper's interpretation of them.

identified the Upper Reaches for possible inclusion on the National Register and Sipple oversaw Zeoli's work in surveying the property, neither the CCH Commission nor Sipple was involved in administering the regulations concerning property owner identification and vote counting. Likewise, while Zeoli was engaged by the CCH Commission to prepare the nomination paperwork, she did not oversee or direct the notification, and she did not participate directly in the notification process or the objection counting. Lastly, Plaintiffs' allegations against Enoch appear to be based on a letter he sent the Keeper in his personal capacity urging approval of the nomination and inclusion of the Upper Reaches on the National Register. Plaintiffs' Amended Complaint did not allege that Enoch played any role whatsoever in the actual nomination process and nothing in the record establishes that he was involved in administering the regulations we found to be arbitrary and capricious. Accordingly, we reverse the circuit court's judgment to the extent it adjudged that the Clark County Fiscal Court, the Clark County Winchester Heritage Commission, Clare Sipple, Vanessa Zeoli, and Harry Enoch violated Plaintiffs' due process rights.

## VI. AWARD OF ATTORNEYS' FEES

We now turn to the circuit court's award of attorneys' fees and costs. "[W]ithout a sound basis in contract or statute, a trial court may not award attorneys' fees." *Seeger v. Lanham*, 542 S.W.3d 286, 295 (Ky. 2018). The

attorneys' fee provision relied on by Plaintiffs, 54 U.S.C. § 307105, is contained in the NHPA. It provides:

> In any civil action brought in any United States district court by any interested person to enforce this division, if the person substantially prevails in the action, the court may award attorney's fees, expert witness fees, and other costs of participating in the civil action, as the court considers reasonable.

54 U.S.C. § 307105.[24]

As a primary matter, Defendants assert that this provision is inapplicable because this action was not brought "in any United States district court." Plaintiffs counter that the federal courts have expanded the statute in such a way as to include actions initiated in other judicial forums, including state court actions.

The one case cited by Plaintiffs to support their contention that a state court has the authority to award attorneys' fees pursuant to 54 U.S.C. § 307105, *Morris County Trust for Historic Preservation v. Pierce*, 730 F.2d 94 (3d Cir. 1983), is inapposite. The issue in *Morris County* was whether the NHPA's attorneys' fee provision was broad enough to cover "an award of appellate attorneys' fees and costs." *Id.* at 95. The Third Circuit held that the statute's language "merely identifies the action in which fees for services are authorized,

---

[24] Formerly cited as 16 U.S.C. § 470w-4.

*viz.*, actions *initiated in a United States district court.*" *Id.* at 96 (emphasis added). The Third Circuit explained that it did not believe that Congress intended to confine awards of attorneys' fees to fees incurred in federal district court when the district court action resulted in an appeal. *Id.* It held that the statute's language was broad enough to cover attorneys' fees incurred on appeal so long as the action itself began in federal district court, and further that a federal circuit court of appeals had the authority to award fees for services rendered in that court where the matter was appealed from federal district court. *Id.* However, we can find nothing in *Morris County*, or any other federal or state court case, to suggest that Congress intended to permit state courts to award attorneys' fees under the NHPA, especially in cases such as this, where the suit was not initiated in federal court in the first instance.

Because courts "are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used," we are bound by the clear language in the statute. *Merritt v. Catholic Health Initiatives, Inc.*, 612 S.W.3d 822, 829 (Ky. 2020) (quoting *Dep't of Revenue, Fin. and Admin. Cabinet v. Wyrick*, 323 S.W.3d 710, 713 (Ky. 2010)). The statute at issue plainly states that it applies to "any civil action brought in any United States district court." 54 U.S.C. § 307105. Plaintiffs brought this action in Fayette Circuit Court, a state court; it was decidedly not "brought in any United

States district court." Accordingly, we must agree with Defendants that the circuit court did not have the authority to award attorneys' fees to Plaintiffs pursuant to 54 U.S.C. § 307105.

Additionally, we conclude that attorneys' fees would not be available against these Defendants even if a state court had the ability to award them. The NHPA is directed at federal agencies. "[I]t provides no toehold to seek redress against a state agency[.]" *Narragansett Indian Tribe by and through Narragansett Indian Tribal Historic Preservation Office v. Rhode Island Department of Transportation*, 903 F.3d 26, 31 (1st Cir. 2018). For this reason, "[n]on-federal agencies" are not liable for violations of the NHPA," and attorneys' fees cannot be assessed against state actors and/or agencies pursuant to 54 U.S.C. § 307105. *Preservation Coalition of Erie County v. Federal Transit Admin.*, 356 F.3d 444, 455 (2d Cir. 2004).

Plaintiffs contend that *Preservation Coalition* should not apply to this case because it is undisputed that Defendants actions were taken in concert with and reliance on the federal regulations and in consultation with the Keeper, a federal employee. A federal district court considered and then rejected a similar argument in *Old Town Neighborhood Ass'n, Inc. v. Kauffman*, No. 1:02 CV 1505 DFH, 2004 WL 2278748, (S.D. Ind. Aug. 20, 2004). The *Old Town* court explained:

Plaintiffs argue that they are the prevailing parties because they obtained the permanent injunction against the City and the Indiana Department of Transportation, and because the injunction prevents the intended swap of Third Street for U.S. Highway 33 that would have violated the National Historic Preservation Act (NHPA).

. . .

The City contends that the NHPA does not authorize a fee award against state and local defendants, but only against federal agencies. The Second Circuit recently agreed with that view in *Preservation Coalition of Erie County v. Federal Transit Admin.*, 356 F.3d 444, 455 (2d Cir. 2004) (affirming historic preservation group's right to recover fees under NHPA from federal agency, but vacating fee award against state agencies). This court agrees, and that findings bars plaintiffs' fee petition. Drawing on authority under 42 U.S.C. § 1988, *plaintiffs contend that the City and the Indiana Department of Transportation should be held liable for fees because they acted jointly with federal officials to violate the NHPA*. This court has not stated a final conclusion as to whether such joint action to violate the NHPA occurred here. However, the Second Circuit faced such joint action in *Preservation Coalition of Erie County*, and the court held squarely that the NHPA authorized a fee award only against the federal agency. *See* 356 F.3d at 447-49 (describing joint efforts of federal, state, and local officials to develop harbor project).

*Id.* at *6-8 (emphasis added).

Like the Second Circuit, we hold that the attorneys' fee provision of

the NHPA does not permit the imposition of attorneys' fees on state actors and

agencies, like those involved in this case. This holding is supported by a long line

of cases recognizing that attorneys' fee provisions allowing for recovery against

-50-

state and federal agencies/actors are an abrogation of sovereign immunity. *Ardestani v. I.N.S.*, 502 U.S. 129, 137, 112 S. Ct. 515, 520, 116 L. Ed. 2d 496 (1991). "Congress can abrogate state sovereign immunity only when it legislates to enforce the Fourteenth Amendment." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 671, 119 S. Ct. 2219, 2224, 144 L. Ed. 2d 605 (1999). And, even in such a case, "Congress must make its intention to alter the constitutional balance between the States and the Federal Government unmistakably clear in a statute's language." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 58, 109 S. Ct. 2304, 2306, 105 L. Ed. 2d 45 (1989). Although Plaintiffs' due process claim arises out of the Fourteenth Amendment, the attorneys' fee provision is contained in the NHPA. The NHPA was not enacted to enforce the Fourteenth Amendment, and it certainly does not contain unmistakably clear language with respect to allowing the imposition of attorneys' fees on non-federal agencies.

In a last-ditch effort to salvage their attorneys' fee award, Plaintiffs contend that even if the NHPA's attorneys' fee provision is not applicable, we should affirm the award as a valid exercise of the circuit court's inherent equitable authority to provide them a remedy. Without such relief, Plaintiffs maintain any finding in their favor on their due process claim would be meaningless. We disagree on both counts.

"The courts of the Commonwealth were previously empowered to award attorneys' fees as an equitable measure, when, within the discretion of the court, it was deemed appropriate." *Seeger*, 542 S.W.3d at 294. This is no longer the law. In *Bell v. Commonwealth*, 423 S.W.3d 742, 750 (Ky. 2014), the Kentucky Supreme Court held that an equitable award of attorneys' fees was not authorized. In the absence of a statute or valid contractual provision allowing for the recovery of attorneys' fees, a trial court's authority to impose attorneys' fees on a party is limited to situations where the fees are imposed as a sanction for undermining the court's authority during the course of the litigation. *Id.* at 749. "In these instances where attorney's fees are appropriate as a sanction, it is not for the benefit of the individual plaintiff, but because there has been an intrusion on the very power of the court." *Id.*

Despite Plaintiffs' efforts to do so, *Bell* cannot be distinguished in a way that would allow the imposition of attorneys' fees in this case. There is no contractual provision allowing for attorneys' fees, and the only statute cited by Plaintiffs to support imposition of attorneys' fees, 54 U.S.C. § 307105, is not applicable where Plaintiffs did not bring suit under the NHPA in a federal district court and Defendants are not federal actors.

Not all judicial determinations are "predicated on whether associated future consequential relief may be requested." *University of Kentucky v. Moore*,

599 S.W.3d 798, 812 (Ky. 2019). Even though Plaintiffs are not entitled to either consequential relief or attorneys' fees, we cannot agree with them that their success in proving a due process violation is entirely meaningless. The circuit court instructed Defendants to petition the Keeper to remove the property based on the procedural due process violation. Even though the Keeper ultimately decided not to delist the property, that action completed the administrative review process. That in turn enabled the Plaintiffs to file suit against the Keeper in federal district court. This was the process we envisioned and articulated in *Norton I*. *Norton I*, 2013 WL 310159 at *10 ("[I]f [Plaintiffs] sought to have a court of this Commonwealth determine if procedural irregularities occurred in the nomination process in order to provide a ground for removal when petitioning the Keeper under 36 C.F.R. § 60.15(a)(4), then exhaustion of administrative remedies would not be required.").

## VII. PLAINTIFFS' CROSS-APPEAL FOR ADDITIONAL RECOMPENSE

Our conclusion that the circuit court was not authorized to award Plaintiffs attorneys' fees and costs under the NHPA, essentially moots Plaintiffs' assignment of error regarding the circuit court's failure to award them additional recompense under the NHPA; nevertheless, in the interest of finality, we will briefly address the cross-appeal.

The expenses referred to in the NHPA are limited to "paralegal expenses as well as any other out-of-pocket expenses which would *normally be charged to a fee paying client*." *National Tr. for Historic Preservation v. Corps of Engineers*, 570 F. Supp. 465, 469 (S.D. Ohio 1983) (emphasis added). In this case, Plaintiffs claim additional recompense for the time they personally spent preparing for and attending meetings and locating other property owners. These are actions Plaintiffs undertook of their own volition; they are not activities that an attorney would normally charge to a fee-paying client; therefore, they are not compensable under the NHPA as an attorney fee, expert witness fee, or cost. *See Skehan v. Board of Trustees of Bloomsburg State College*, 436 F. Supp. 657, 667 (M.D. Pa. 1977), *aff'd and remanded*, 590 F.2d 470 (3d Cir. 1978) (disallowing recovery of expenses plaintiff incurred while personally aiding his attorneys in the preparation of his case).

## VIII. CONCLUSION

In conclusion, for the reasons set forth above: (1) we affirm the circuit court's conclusion that Defendants are not immune from suit with respect to Plaintiffs' due process claim; (2) we hold that we lack jurisdiction to consider the parties' arguments regarding sovereign, governmental and/or qualified official immunity with respect to Plaintiffs' other claims as the circuit court specifically reserved judgment on Defendants' immunity defenses with respect to the other

claims; (3) we affirm the circuit court's judgment finding the Kentucky Heritage Council, its director, Mark Dennen, and its National Register Coordinator, Marty Perry, liable for violating Plaintiffs' due process rights insomuch as they applied the regulations and the Keeper's interpretation thereof at the state level in conjunction with nominating the Upper Reaches for inclusion on the National Register, identifying property owners eligible to vote and tabulating the objections; (4) we reverse the circuit court's judgment finding the Clark County Fiscal Court, the Clark County Winchester Heritage Commission, Clare Sipple, Vanessa Zeoli, and Harry Enoch liable for violating Plaintiffs' due process rights; (5) we reverse the circuit court's award of attorneys' fees and costs; (6) we affirm the circuit court's denial of Plaintiffs' claim for additional recompense; (7) we hold that we lack jurisdiction to consider the other assignments of error as those issues were not contained in the Combined General Order of May 15, 2017, as made final and appealable with no just reason for delay, by the circuit court's order of June 13, 2017; and (8) we remand this matter for further proceedings and entry of a modified judgment in conformance with this Opinion.

ACREE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN PART, AND DISSENTS IN PART, AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE: In general, I concur with the majority opinion. While I consider it unfortunate that there is no basis upon which the

circuit court's substantial award of attorney fees to the prevailing plaintiffs can be affirmed, I dissent as to the wholesale reversal of costs.

The majority opinion notes that the circuit court awarded attorney fees, expert witness fees, and other costs pursuant to 54 U.S.C. § 307105. It then states in section VI "[w]e now turn to the circuit court's award of attorneys' fees and costs" but then proceeds to only address attorney fees in the first sentence of section VII it concludes "the circuit court was not authorized to award Plaintiffs attorneys' fees and costs under NHPA[.]" In section VIII(5) it reverses the award of attorney fees and costs.

While 54 U.S.C. § 307105 provides for "attorney's fees, expert witness fees, and other costs" and I agree it is not applicable here, that does not mean that there are no mechanisms to recover costs, including nominal amounts for witnesses, pursuant to our statutes. I believe the majority opinion errs by failing to address whether costs are otherwise available to the plaintiffs.

KRS 453.040(1)(a) provides in relevant part regarding costs: "The successful party in any action shall recover his costs, unless otherwise provided by law." As stated in KRS 453.050:

> The bill of costs of the successful party shall include, in addition to other costs taxed, the tax on law process and official seals, all fees of officers with which the party is chargeable in the case, postage on depositions, the cost of copy of any pleading or exhibit obtained, the cost of any copies made exhibits and the allowance to witnesses,

> which the court may by order confine to not more than two (2) witnesses to any one (1) point.

In *Bryan v. CorrectCare-Integrated Health, Inc.*, 420 S.W.3d 520, 526 (Ky.App. 2013), the Court examined what was intended in KRS 453.050 regarding an "allowance to witnesses" as basically being a per diem which the trial court had the discretion to award to more than two witnesses so long as it was calculated with specificity.

Kentucky Rules of Civil Procedure (CR) 54.04 further clarifies how and which costs can be recovered:

> (1) Costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the Commonwealth, its officers and agencies shall be imposed only to the extent permitted by law. In the event of a partial judgment or a judgment in which neither party prevails entirely against the other, costs shall be borne as directed by the trial court.
>
> (2) A party entitled to recover costs shall prepare and serve upon the party liable therefor a bill itemizing the costs incurred by him in the action, including filing fees, fees incident to service of process and summoning of witnesses, jury fees, warning order attorney, and guardian ad litem fees, costs of the originals of any depositions (whether taken stenographically or by other than stenographic means), fees for extraordinary services ordered to be paid by the court, and such other costs as are ordinarily recoverable by the successful party. If within five days after such service no exceptions to the bill are served on the prevailing party, the clerk shall endorse on the face of the judgment the total amount of costs recoverable as a part of the judgment.

Exceptions shall be heard and resolved by the trial court in the form of a supplemental judgment.

The circuit court ruled that the Plaintiffs substantially prevailed and, so, it was entitled to award costs of the type listed in KRS 453.050 and CR 54.04.[25] This could include the per diem type expenses of witnesses. It would be appropriate to vacate the circuit court's cost award of $13,465.43 pursuant to 54 U.S.C. § 307105 and instruct the circuit court to consider what costs may properly be awarded under Kentucky law. I express no opinion as to whether the previous award amount was appropriate or should be higher or lower.

Accordingly, I concur in part and dissent in part.

---

[25] I note that pursuant to KRS 453.060 as the prevailing parties below, the circuit court could award the Plaintiffs' attorney fees of $5.00.

BRIEF FOR APPELLANTS/CROSS-APPELLEES CLARE ZIPPLE AND VANESSA ZEOLI:

W. Henry Grady IV
Versailles, Kentucky

Randal A. Strobol
Louisville, Kentucky

BRIEF FOR APPELLANTS/CROSS-APPELLEES CLARK COUNTY-WINCHESTER HERITAGE COMMISSION AND HARRY ENOCH:

Erica K. Mack
Lexington, Kentucky

BRIEF FOR APPELLANT/CROSS-APPELLEE CLARK COUNTY FISCAL COURT:

Bruce E. Smith
Harry E. Smith
Nicholasville, Kentucky

Brian N. Thomas
Winchester, Kentucky

BRIEF FOR APPELLANTS/CROSS-APPELLEES KENTUCKY HERITAGE COUNCIL, MARTY PERRY, AND MARK DENNEN:

William H. Adams II
Jean W. Bird
Lexington, Kentucky

BRIEF FOR APPELLEES/CROSS-APPELLANTS:

Carroll M. Redford, III
Elizabeth C. Woodford
Lexington, Kentucky

BRIEF FOR APPELLEE THE UNIVERSITY OF KENTUCKY:

Joshua M. Salsburey
Donald M. Morgan
William E. Thro
Lexington, Kentucky